UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE S. CORTS,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Case No. 1:04-CV-301
Hon. Gordon J. Quist

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on August 11, 1951, has a high school diploma and graduated from barber college (AR 125, 140).[1] Plaintiff stated that she became disabled on April 1, 1991 (AR 125). She identified her disabling conditions as arthritis in hands, wrists and knees, crepitus in right knee, emotional problems and depression (AR 136). Plaintiff's claim has an extensive procedural history.

On November 3, 1999, an administrative law judge (ALJ) found that plaintiff was disabled as defined in the Social Security Act as of April 1, 1991 (AR 56-58). On December 1, 1999, the Office of Quality Assurance and Performance Assessment referred the case to the Appeals Council for review (AR 96). On March 7, 2000, the Appeals Council concluded that "substantial evidence does not support a finding that pain and weakness in the claimant's knees has prevented

---

[1] Citations to the administrative record will be referenced as (AR "page #").

her from performing sedentary work since April 1, 1991," vacated the hearing decision and remanded the case for further proceedings with an ALJ (AR 96-99). The Appeals Council's order instructed the ALJ as follows:

> Accordingly, on remand, the Administrative Law Judge will obtain additional medical evidence. The additional evidence may include existing treatment records, a consultative orthopedic examination, and medical source statements about what the claimant could still do despite her impairments throughout the period at issue beginning on April 1, 1991.
>
> The Administrative Law Judge will obtain supplemental evidence from a medical expert or experts to clarify the nature, severity, and limitations resulting from all the claimant's mental and physical impairments throughout the period at issue.
>
> The Administrative Law Judge will further evaluate the claimant's mental impairments and complete a Psychiatric Review Technique form in accordance with 20 CFR 404.1520a.
>
> The Administrative Law Judge will give further consideration to the claimant's maximum functional capacity throughout the period at issue and provide rationale with specific reference to evidence of record in support of the assessed limitations.
>
> As appropriate, the Administrative Law Judge will obtain supplemental evidence from a vocational expert to clarify the effect of assessed limitations on the claimant's occupational base throughout the period at issue.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(AR 98). On remand, the ALJ reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 26, 2000 (AR 25-37). This decision, which was later approved by the

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the

evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since April 1, 1991 (the alleged onset of disability) and that she was insured for DIB only through September 30, 1996 (AR 35). Second, the ALJ found that from April 1, 1991 through September 30, 1996, plaintiff suffered from severe impairments of "obesity and osteoarthritis and degenerative changes involving both knees" (AR 35). At the third step, the ALJ found that, on or before September 30, 1996, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21, 23).

The ALJ decided at the fourth step that from April 1, 1991 through September 30, 1996, plaintiff retained the residual functional capacity:

> to perform sedentary work, or work that is generally performed while sitting and which requires lifting of no more than ten pounds. The claimant required the option to sit or stand at will. She could not repetitively bend or twist. She could not squat, kneel, crawl or climb. She was not able to stand or walk for longer than five minutes in each hour. She required the ability to elevate her legs below desk level. By including these limitations in the claimant's residual functional capacity, the undersigned has given the claimant every reasonable benefit of the doubt.

(AR 36). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 36).

At the fifth step, the ALJ determined that from April 1, 1991 through September 30, 1996, plaintiff was capable of performing a range of sedentary work (AR 36). Specifically, the ALJ

found that an individual with plaintiff's limitations could perform approximately 9,000 jobs in the regional economy including security monitor, cashier and dispatcher (AR 35-36). The ALJ also found plaintiff's allegations regarding her limitations were not credible (AR 36). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 36-37).

### III. ANALYSIS

Plaintiff raises three issues on appeal.

> **A. Did the Administrative Law Judge appropriately explain why impairments such as carpal tunnel syndrome, female problems and urinary incontinence were not found severe, and were the effects of such a combination of impairments given proper and adequate consideration?**

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff suffered from severe impairments of "obesity and osteoarthritis and degenerative changes involving both knees" (AR 35). Although the ALJ did not specifically find that plaintiff's carpal tunnel syndrome, female problems and urinary incontinence were "severe impairments," he considered the effects of these conditions when he performed the five-step sequential evaluation. For example, the

ALJ discussed plaintiff's carpal tunnel surgery, heavy menstrual bleeding and endometriosis, thyroid problems, toe fracture, sinusitis, headaches, incontinence, anxiety and depression (AR 28-32). In this regard, the ALJ observed that while plaintiff underwent tunnel carpal surgery in 1987, she continue to work for four years until her alleged onset date of April 1, 1991 (AR 32).

Plaintiff also contends that the ALJ failed to give proper consideration to the combined effects of her impairments. The court disagrees with this contention. The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). *See* 20 C.F.R. § 404.1523. The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (per curiam).

Here, the ALJ stated at the third page of his decision that the regulations require him to consider whether a claimant has an "impairment or impairments" which limits her ability to

7

perform basic work activities (AR 27). Throughout the opinion, the ALJ referred to plaintiff's "impairments," discussed the impairments individually and stated that he reached his decision "[a]fter careful consideration of the entire record" (AR 27-36). These findings and discussions indicate that the ALJ considered the combined effect of plaintiff's alleged impairments. In addition, the ALJ specifically found that "the claimant had no impairment or combination of impairments that met or equaled the criteria of any of the listed impairments" (AR 36). *See Loy*, 901 F.2d at 1310 ("ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of impairments in combination, where the ALJ specifically refers to 'combination of impairments' in finding that the plaintiff does not meet the listings"). In summary, the ALJ's decision indicates that he considered the combined effects of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592.

Furthermore, it appears that the ALJ took into account plaintiff's impairments when he determined that plaintiff had numerous non-exertional limitations. For example, plaintiff required the option to sit or stand at will, could not repetitively bend, twist, squat, kneel, crawl or climb, stand or walk for longer than five minutes in each hour, and needed to elevate her legs below desk level (AR 36). Accordingly, the ALJ's failure to find these additional conditions as "severe impairments" is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.

> **B. Did the Administrative Law Judge comply with the remand order of the Appeals Council?**

Next, plaintiff contends that the ALJ did not comply with that portion of the Appeals Council's remand order that required him to "obtain supplemental evidence from a medical expert or experts to clarify the nature, severity, and limitations resulting from all the claimant's mental and

physical impairments throughout the period at issue." Plaintiff's Brief at 21; (AR 98). Specifically, plaintiff contends that the ALJ "complied as to claimant's mental impairments, but not to claimant's physical impairments." Plaintiff's brief at 21. The court agrees with plaintiff that there is no record that the ALJ obtained supplemental evidence from a medical expert "to clarify the nature, severity, and limitations resulting from all the claimant's . . .physical impairments throughout the period at issue" (AR 98). While the ALJ consulted with a medical expert, Dr. Robert Brooks, to obtain supplemental evidence clarifying the nature of plaintiff's mental impairments (AR 1034-36), the ALJ did not consult with a separate medical expert with respect to plaintiff's medical condition. Nevertheless, the ALJ's apparent failure to comply with a remand order from the Appeals Council is not subject to review by this court.

The record reflects that plaintiff's counsel requested a review of the ALJ's decision on September 29, 2000 and that the Appeals Council provided material and granted extensions to plaintiff's counsel on May 16, 2003, December 2, 2003 and February 6, 2004 (AR 11-15, 18). The record also reflects that counsel sent the Appeals Council a memorandum dated May 30, 2003, a FAX message dated December 19, 2003 and another memorandum dated February 24, 2004 (AR 10). The Appeals Council denied plaintiff's request for review on April 28, 2004 (AR 7-10). This record indicates that plaintiff had ample opportunity to present her case to the Appeals Council. In denying the request for review, the Appeals Council was apparently satisfied with the scope of the ALJ's decision. An alleged error in the Appeals Council's handling of the matter after remand is not a basis for this court to overturn the ALJ's decision. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S.

99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

In his reply brief, plaintiff contends that the ALJ improperly rejected the testimony Dr. Lyons, the medical expert (ME) who testified at plaintiff's 1999 hearing. I cannot concur with plaintiff's contention that the ALJ improperly rejected the ME's opinion for his own.

Dr. Lyons entire opinion consisted of one word:

ALJ:  Dr. Lyons, is there support in the medical record for her claim that her knees hurt so much that she would prop them up several hours a day?

ME:  Yes.

(AR 1028).

The Appeals Council found Dr. Lyon's opinion insufficient:

At the hearing, a medical expert responded affirmatively when he was asked whether there was support in the medical record for the claimant's contention that her knees hurt so much that she must prop them up for several hours a day. However, the medical expert did not comment on how the medical record reflects on the nature, severity, and limitations resulting from all the claimant's impairments throughout the period at issue. He did not comment on whether the evidence indicates that the claimant was required to prop up her knees on or before September 30, 1996, the date she last met the special earnings requirements for disability benefits, or as early as April 1, 1991, the claimant's alleged date of disability onset. The evidence of record is insufficient to show that the claimant has been dsabled on or before September 30, 1996.

(AR 97-98).

In his 2000 decision, the ALJ reviewed this aspect of the claim as follows:

> A careful and thorough review of the voluminous medical records shows that at no time prior to October 1, 1996 did the claimant allege to her treating doctors that she needed to elevate her legs at any time and the record of treatment in no way even suggests the need to do so on any persistent basis. Additionally, the claimant never reported or received treatment for the degree of pain that she indicated at the hearing. Furthermore, no treating or examining physician recommended that the claimant elevate her legs. The undersigned notes that a great deal of the medical evidence of record covers the period prior to the alleged onset date of April 1, 1991 or after September 30, 1996, when her insured status expired. However, during the relevant period from April 1, 1991 through September 30, 1996, the claimant did not receive continued medical treatment for any of her impairments on a regular and ongoing basis. . . .
>
> The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations [citations omitted].
>
> On July 12, 1998, the non-treating, non-examining physicians of the State Agency opined that the claimant had the residual functional capacity to perform medium work, or work that requires frequent lifting of no more than 25 pounds and occasional lifting of no more than 50 pounds [citation omitted]. . . .
>
> At the prior hearing of October 1999, the medical expert testified that the claimant would need to elevate her legs. However, as the [sic] already discussed in this decision and as pointed out in the Appeal Council's remand, the record does not document any such medical requirement.

(AR 33).

Despite this lack of medical evidence regarding plaintiff's need to elevate her legs, the ALJ gave plaintiff "every reasonable benefit of the doubt" and included in the RFC limitation that "[s]he required the ability to elevate her legs below desk level" (AR 36). Given this record, the ALJ's decision is supported by substantial evidence.

11

### C. Do the Administrative Law Judge's findings comport with the hypothetical given to the vocational expert so as to be supportive of his denial of benefits?

Finally, plaintiff contends that the ALJ's RFC determination was not supported by the vocational expert's testimony. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ's finding that she had the RFC "to perform sedentary work" was flawed because (1) the ALJ's findings do not comport with sedentary employment, (2) "unskilled sedentary jobs require good use of the hands and fingers and in this matter there is documented evidence that [plaintiff] suffers from carpal tunnel syndrome," and (3) the ALJ found that "[plaintiff's] exertional limitations do not allow her to perform the full range of sedentary work." Plaintiff's Brief at 22-23.

The exertional level of sedentary work is defined at 20 C.F.R. § 404.1567 as follows:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the

> Department of Labor. In making disability determinations under this subpart, we use the following definitions:
>
> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> The ALJ posed the following hypothetical question to the vocational expert (VE):
>
> Let's assume an individual the same age and educational background as the claimant limited to an exertional level and a full range of sedentary with non-exertional limitations of a sit and stand option able to alternate at will, no repetitive bending or squatting -- or no repetitive bending or twisting, no squatting, kneeling, crawling or climbing. No prolonged standing or walking. And prolonged is to be defined as five minutes, an hour maximum. And able to elevate her legs below desk level. Would there be jobs available for an individual with those limitations?

(AR 1057).[2]  In response, the VE testified that such a person could perform about 3,000 positions as a security system monitor or a surveillance system monitor, 5,000 positions as a cashier and 1,000 positions as a dispatcher (AR 1058).

As an initial matter, while plaintiff asserts that "unskilled sedentary jobs require good use of the hands and fingers," this requirement does not fall within the definition of sedentary work. *See* 20 C.F.R. § 404.1567(a).  In addition, neither the hypothetical question nor the RFC determination assumed that plaintiff could perform the full range of sedentary work.  Rather, both the hypothetical question and the RFC determination limited non-exertional aspects of the work. For example, while the full range of sedentary work could involve walking and standing, the ALJ's

---

[2] This hypothetical question includes the same restrictions as set forth in the ALJ's RFC determination. *See* § II, *infra*.

hypothetical question and RFC determination exempted those sedentary jobs that involved standing or walking for longer than five minutes in each hour (AR 36). Finally, the ALJ did not find plaintiff's claim of carpal tunnel syndrome to constitute a significant limitation during the relevant time period (April 1, 1991 through September 30, 1996), noting that "plaintiff had carpal tunnel release surgery in 1987 and that she continued to work for four years prior to the alleged onset date of April 1, 1991" (AR 32). Accordingly, the ALJ's conclusion that plaintiff could perform approximately 9,000 sedentary jobs is supported by substantial evidence.

## IV.    Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  June 13, 2005                                 /s/ Hugh W. Brenneman, Jr.
                                                     Hugh W. Brenneman, Jr.
                                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).